**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DAVID LOUIS COSTELLA,

          Petitioner,

      v.

KENNETH CLARK, Warden,

          Respondent.

_____/

No. C 08-1010 PJH

**ORDER DENYING PETITION
FOR WRIT OF HABEAS CORPUS**

      Before the court is the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, filed by state prisoner, David Costella ("Costella").  Having reviewed the parties' papers, and having carefully considered their arguments, the record, and the relevant legal authorities, the court hereby DENIES the petition.

**BACKGROUND**

**A.    Procedural Background**

      On January 10, 2003, a jury in the Santa Clara County Superior Court found Costella guilty of continuous sexual abuse of a child under fourteen years-old and of lewd and lascivious acts with a child under fourteen years-old pursuant to California Penal Code §§ 288.5(a) and 288(a).  On March 14, 2003, the court sentenced Costella to eighteen years in prison.

      Costella subsequently timely filed both a direct appeal and a habeas petition with the California Court of Appeal.  On October 1, 2004, the state appellate court affirmed Costella's conviction on direct appeal and also denied habeas relief.  Costella then

United States District Court

For the Northern District of California

1  petitioned the California Supreme Court for review of the California Court of Appeal's

2  decisions.

3       On December 15, 2004, the California Supreme Court denied review of Costella's

4  direct appeal, but on January 12, 2005, granted review of the California Court of Appeal's

5  denial of the writ of habeas corpus.  In that order, the state supreme court directed the

6  California Court of Appeal to vacate its order denying habeas relief, and to issue an order

7  to show cause why Costella was not entitled to relief based on his claims that his trial

8  counsel was ineffective for failing to conduct an investigation into the credibility of the minor

9  victim, and for failing to investigate and present lay and expert testimony establishing that

10  Costella did not possess sexually deviant personality characteristics.  That order to show

11  cause was returnable before the Santa Clara County Superior Court.

12       Subsequently, on August 10, 2005, the trial court issued an order for an evidentiary

13  hearing to resolve several factual disputes related to the claims.  In December 2005, the

14  court held a three-day evidentiary hearing, at which approximately ten witnesses testified.

15  On April 27, 2006, the superior court issued a ten-page written order denying habeas relief

16  following the evidentiary hearing.

17       On September 11, 2006, Costella filed another habeas petition with the California

18  Court of Appeal.  On December 11, 2006, the California Court of Appeal again denied

19  habeas relief.  Costella filed another petition for review with the California Supreme Court

20  on December 20, 2006, which the court denied on February 14, 2007.  Costella

21  subsequently filed the instant federal habeas petition on February 20, 2008.

22       On June 17, 2008, the state filed a motion to dismiss Costella's petition as untimely,

23  which the court denied on January 8, 2009.  Subsequently, on June 10, 2009, Costella filed

24  a motion for discovery, motion to expand the record, and a request for an evidentiary

25  hearing.

26       Costella sought discovery of the minor victim, his daughter, "M."'s medical records,

27  which he claimed might demonstrate that the incidents of molestation attested to by his

28

**United States District Court**
For the Northern District of California

1  daughter, including allegations that he subjected her to full intercourse for three years,

2  never occurred.  Costella asserted that it was not a lack of diligence that prevented him

3  from obtaining the records in conjunction with the state court evidentiary hearing, but

4  instead conceded that California law prohibited him from such discovery since he had not

5  been sentenced to death or life without parole.  On December 7, 2009, the court denied

6  Costella's motion for discovery, concluding that Costella's showing in support of the motion

7  was speculative, and that he had made no showing that the medical records were

8  "essential" to the development of his ineffective assistance of counsel claims.

9      As for Costella's requests to expand the record and for an evidentiary hearing, the

10  court deferred ruling on those requests until the time that it issued its order on the merits of

11  his federal habeas petition.

12  **B.      Factual Background**

13      **1.      Trial Evidence and Testimony**

14      The evidence and testimony at trial revealed the following.  Costella's daughter, M.,

15  was born in November 1984.  When M. was four or five years-old, Costella and M.'s

16  mother, Patricia, separated.  M. and her younger brother S. spent Tuesdays and Thursdays

17  and every other weekend with Costella at his home.

18      M. testified that when she was about seven, Costella began to come into her

19  bedroom on the weekend nights when she was staying at his house.  He would wake her

20  and have sexual intercourse with her.  It happened almost every weekend from third grade

21  until fifth grade.  M. remembered that Costella lived in a house on Willowdale Avenue in

22  San Jose then, and that he had alcohol on his breath when it happened.  He told her it was

23  their secret and that she should not tell anyone.

24      In 1992, M.'s third grade teacher arranged for a police officer come to the classroom

25  and talk to the children about what to do if a stranger touched them in an improper way.

26  The officer explained that they should tell a teacher or an adult.  M. thought she did not

27  need to tell anyone about her father touching her because he was not a stranger.

28

As M. got older, and after she completed sex education in the sixth grade, she realized her father's actions were wrong.  She became angry and defensive and began to talk back to her father.  He told her the sexual activity was her fault and that she should have said no earlier.  M. tried to stop the conduct by leaving the lights on in her room at night, stuffing towels under the bottom of her door, staying up late or sleeping in the same room with her younger brother.

In April 1995, Costella began dating Geraldine F.  At some point, possibly by summer of 1996, Geraldine moved into Costella's house and the sexual activity with M. stopped.  Geraldine F. testified that she began dating Costella on April 28, 1995 , and that she did not meet Costella's children until a few months later in the summer of 1995, when they all went to a movie. She could not remember an exact date when she moved into Costella's house, but thought it was probably nearly a year after they met or even during the summer of 1996.  Costella's own testimony was in accord.

During the summer of 1998, when M. was thirteen years-old, she stopped visiting her father, and only saw him occasionally on holidays thereafter.  Later in December 1998, M. began dating Ali N.  After about six months, she told him that her father had physically abused her.  Ali realized that this was a difficult and emotional topic for her.  Although he urged M. to tell her mother, she said she wanted to wait until she was eighteen years-old and had more control over what would happen.

During her freshman year of high school in 1998-1999, M. developed bulimia.  The next year, during her sophomore year, M. discussed her struggles with bulimia with her close friend, Monica S.  When Monica questioned M. regarding the cause of her bulimia, M. disclosed that her father had molested her, but gave no other details.  M.'s eating problems continued, and she was hospitalized in January 2002 after she swallowed a toothbrush while trying to gag herself.  She then began attending a clinic for eating disorders at Stanford University.

A few months later, in March 2002, M. was having problems at home and was in

4

conflict with her mother, Patricia.  When her mother suggested she should go live with her

father, M. told her mother that she could not live with her father because of the prior

molestation.  Her mother immediately contacted the police.

On March 5, 2002, M. was interviewed by a police officer.  An investigator, Detective

Grothaus, then interviewed M., and had her make a pretext call to Costella, which was

taped and admitted into evidence at trial.  During the call, M. attempted to get Costella to

admit he had molested her and to apologize.  Costella emphatically denied any

wrongdoing.

M. also showed the detective a copy of a letter she had written as a school

assignment, in which she made references to having been innocent until someone took

advantage of that innocence.  She also wrote, "Here I am in the prime of my life and I have

to deal with these problems. . . .  Maybe because you were a sorry excuse for a parent.

How could you do this?  You told me I was your princess.  I guess you were wrong. . . . I

am your princess no longer, dad.  I am your worst enemy."

Costella emphatically and consistently denied molesting M., in the pretext telephone

call, when questioned by police, and in his testimony at trial.  He also denied having a

drinking problem.[1]  During his trial testimony, Costella maintained that he sent M. home one

day in the fall of 1998 and forbade her from visiting him because of his arguments with M.'s

mother, and because of M's own bad attitude and bad behavior.  Costella stated that he

was shocked by the pretext call from M. in which she accused him of molesting her.  His

only explanation as to why M. would accuse him of such terrible acts was because he had

recently refused to pay for college for her.

At trial, the prosecution called M., M's close friend, Monica S., Costella's ex-wife,

Geraldine F., M.'s boyfriend, Ali N., M.'s mother, Patricia, and Detective Grothaus.  The

defense called Costella and one of M.'s high school teachers.

---

[1]This conflicted with testimony from M.'s mother, Patricia, and Costella's second wife, Geraldine F., both of whom testified that their marriages to Costella broke up in part because of his drinking problem.

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

1    Costella's ex-wife, Geraldine F., testified that she had seen what she believed was

2    inappropriate behavior between Costella and his daughter during the time she lived with

3    him.  R.T. 248.  Costella would tickle M. and nuzzle her neck after M. had become a

4    physically developed girl.  On one occasion, Geraldine looked for Costella and found him in

5    M.'s bedroom, lying on top of the covers next to M., who was under the covers.  He was

6    stroking her head, M. was apparently sick, and Costella had been drinking at the time.

7    Geraldine confronted Costella about the incident later, and Costella became very angry,

8    accusing her of being jealous of M.  Costella testified that he did not remember the

9    incident.

10    Costella testified at trial that he was surprised by M.'s pretext call, and admitted that

11    M. did not have a history of lying or fabricating stories.

12    In addition to the percipient witnesses, two experts, Inspector Carl Lewis and Dr.

13    Brian Abbott, were qualified and presented evidence on Child Sexual Abuse

14    Accommodation Syndrome ("CSAAS"), a syndrome which explains why sexually abused

15    children delay reporting the abuse.  Lewis presented evidence for the prosecution, and

16    Abbott testified for the defense.

17    Lewis explained that he had an Associate of Science degree in the administration of

18    justice and was currently finishing his studies at San Jose State University.  Since 1984,

19    when he became a police officer, he had received training concerning sex crimes against

20    children, had been the Los Gatos Police Department investigator of crimes against children

21    in 1992, and had received several hundred hours of classroom training in the investigation

22    of crimes against children, especially sex crimes, since then.  At the time of trial, he was an

23    investigator with the Santa Clara County District Attorney's office, and had investigated 200

24    to 300 cases involving sex crimes against children.  Since 1992, he had received training in

25    CSAAS and had been qualified as an expert in that area nearly 80 times in state and

26    federal courts.

27    In his testimony, Lewis carefully explained that he had not interviewed any witnesses

28

United States District Court

For the Northern District of California

1  or read any reports in connection with the present case and that he was unaware of the

2  actual charges or facts.  He explained that CSAAS is a label placed on five of the most

3  commonly seen reactions among children disclosing sexual abuse and noted that the

4  behaviors are contrary to what people might expect from a child sexual abuse victim, and

5  include:  (1) secrecy; (2) helplessness; (3) entrapment and accommodation; (4) delayed,

6  conflicted, unconvincing disclosure; and, (5) retraction.  Investigator Lewis emphasized that

7  CSAAS is not a real syndrome because it cannot be used as a diagnostic tool, and that it

8  should not be used to determine whether or not a claim of abuse is true, but rather to

9  explain certain unexpected behaviors.

10  Costella introduced expert testimony from Dr. Abbott, a licensed clinical psychologist

11  and the executive director of a child sexual abuse center, for the purpose of calling into

12  question Dr. Lewis' testimony regarding CSAAS, and to suggest that M. did not suffer from

13  CSAAS.

14  The jury ultimately convicted Costella of both counts.  Prior to sentencing, the trial

15  court refused Costella's request to order a psychological report pursuant to section 288.1 to

16  assess his eligibility for probation, and instead sentenced Costella to eighteen years in

17  prison.

18  **2.      State Habeas Evidentiary Hearing**

19  As noted, following Costella's conviction he sought habeas relief before the state

20  appellate courts.  Costella raised the same ineffective assistance of counsel claims in his

21  petition before the state courts that he raises here.[2]  The California Court of Appeal issued

22  a postcard denial, but the California Supreme Court granted the petition for review and

23  remanded two of Costella's seven claims for ineffective assistance of counsel for further

24  proceedings.  The California Supreme Court held that the state should be ordered to show

25  cause before the Santa Clara County Superior Court why Costella was "not entitled to relief

26  _____

27  [2]As discussed in detail below, Costella has also raised an additional ineffective
assistance of counsel claim before this court that he did not raise in his initial habeas petitions
28  before the state courts.

United States District Court

For the Northern District of California

1  based on ineffective assistance of trial counsel for failing to conduct an investigation into

2  the credibility of witness M., and for failing to investigate and present lay and expert

3  testimony establishing that [he] did not exhibit sexually deviant personality characteristics."

4       The specific claims on which the California Supreme Court granted review, as stated

5  in his state habeas petition, were that Costella's trial counsel provided ineffective

6  assistance of counsel when he (1) failed to conduct a thorough investigation of M.'s

7  credibility; and (2) failed to adduce both lay and expert testimony that Costella did not have

8  the characteristics of a sexual deviant.

9       With his first claim, Costella argued that had his trial counsel thoroughly investigated

10  his daughter's credibility, he would have uncovered significant impeachment material,

11  including evidence that the purported molestations could not have occurred at the places

12  and times she alleged.  He contended that he told his trial counsel that M.'s version of the

13  events was untrue, and that he could prove that was the case.  In support, he submitted a

14  declaration from an ex-girlfriend, Nadia Chapman, which he asserted demonstrated that M.

15  was untruthful regarding the location and timing of the molestations, and in which Chapman

16  also questioned M.'s credibility generally.  Costella asserted that this information was

17  available to his trial counsel, but that counsel did nothing to pursue the leads.

18       Regarding the second claim, Costella contended that his trial counsel failed to

19  produce both expert and lay testimony that would demonstrate that he did not have the

20  personality of a child molester.  In support of this claim, Costella pointed to accompanying

21  declarations from three ex-girlfriends, including Chapman, Sharon Christie, and Robin

22  Guest, which he argued demonstrated that he was engaged in normal sexual relationships

23  during the period of time he allegedly molested his daughter.  Costella also submitted a

24  declaration from Dr. Alan Garton, a clinical psychologist who evaluated him after his trial for

25  the purpose of preparing a pre-sentencing, pre-probation evaluation.  Dr. Garton stated in

26  his declaration that Costella's trial counsel did not ask him to opine on his personality prior

27  to trial, and that if he had been called to testify, he "could have opined on that subject in a

28

United States District Court

For the Northern District of California

manner *possibly* favorable to the defense."  Costella argued that his trial counsel's failure to present the above evidence to the jury was prejudicial because it left the jury without any evidence regarding his sexual life and/or his sexual personality.

Following the issuance of an order to show cause as to the above two claims for ineffective assistance of counsel, the state filed a "return" to Costella's habeas petition explaining why he was not entitled to relief, and Costella filed a traverse.  The state trial court then issued an order for an evidentiary hearing on Costella's two habeas claims.  It held that a hearing was necessary to resolve factual disputes on three issues:

1.  Costella's living arrangements during his visitations in the last half of 1993;

2.  whether Costella directed his trial counsel not to contact or interview his ex-girlfriends as potential witnesses, thereby precluding his claim of ineffective assistance; and

3.  the impact of trial counsel's alleged failure to investigate and present expert testimony regarding Costella's lack of sexually deviant personality characteristics.

The parties filed pre- and post-hearing briefs in conjunction with the three-day evidentiary hearing in December 2005.

Costella called five witnesses to testify at the December 2005 evidentiary hearing, including himself; an ex-girlfriend, Nadia Chapman; his father, Phillip Costella; his third wife, Sherrie Costella; and an expert witness, Dr. Alan Garton.  The state also called five witnesses: Albie Jachimowicz, Costella's trial counsel; Eugene Wilson, Costella's and his father, Phillip Costella's former employer; Dr. Brian Abbott, Costella's expert witness at trial; S., Costella's son and M.'s brother; and Andrea Moreland, an investigator for the District Attorney.

Regarding his claim that his trial counsel failed to conduct a thorough investigation of M.'s credibility, Costella attempted to show that he did not live at the specific residence, the Willowdale residence, where M. claimed the molestation took place in part while she was in third grade during 1992-1993.  Costella testified at the hearing that he lived with his ex-girlfriend, Chapman, at another residence until June 1993.  Chapman corroborated this,

testifying that Costella moved out of her residence around May 1993.  Costella's PG&E records demonstrated that he first requested power at the Willowdale residence on June 3, 1993, and the parties further stipulated that Costella submitted a change of address to his employer September 1, 1993.

Costella further testified that he gave Jachimowicz, his trial counsel, a timeline that detailed the above living arrangements, and also that he told Jachimowicz that Chapman would be willing to testify that he did not live at the Willowdale residence until June 1993. Costella testified that Jachimowicz dismissed the timeline issue.

Jachimowicz did not dispute that Costella provided him with a timeline, but testified at the evidentiary hearing that the precise date that Costella moved into the Willowdale residence was not important because the molestations were alleged to have occurred over a three-year period of time from 1992-1995, and that a jury could convict Costella as long as it believed that the molestations occurred anytime during that time frame.[3]  Additionally, Jachimowicz testified that evidence that the molestations occurred later in time rather than earlier in time, which Costella's timeline suggested, was actually detrimental to Costella's statute of limitations defense.

Costella testified that he asked Jachimowicz to contact his ex-girlfriends for helpful information. Jachimowicz testified, though, contrary to Costella, that he repeatedly asked Costella for permission to interview his ex-girlfriends regarding any testimony that they had that might be helpful to his case.  However, according to Jachimowicz, Costella refused, advising Jachimowicz that they had information that Costella did not want exposed.

Costella also testified, in accordance with the timeline that he alleged he provided Jachimowicz, that he had knee surgery on August 10, 1993, and therefore had not seen his children, including M. "much" for six to eight weeks after the surgery.  This was during the time period that the molestation occurred.  Jachimowicz testified that he did not recall

---

[3]Costella's ex-wife, Patricia, testified for the prosecution at trial that Costella had moved to the Willowdale residence in 1992 or 1993.

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1    discussing the knee surgery with Costella.[4]

2         Costella further testified that M.'s testimony regarding the location of the

3    molestations was questionable because from 1993-1995, he and the children stayed at his

4    parents' home in Sunnyvale, California on the weekends due to his work schedule, and M.

5    and S. slept together in one room there.  Costella testified that he gave this information to

6    Jachimowicz.

7         Costella's father, Phillip, testified that Costella stayed at his house while he worked

8    for Eugene Wilson, who owned a machine shop, formerly owned by Phillip.  Phillip testified

9    that the children spent one or two weekends a month at his home while Costella worked,

10   but that it was not every weekend.  He could not recall the exact time period, though.

11        Jachimowicz contradicted Costella's testimony, and testified that Costella had not

12   discussed the fact that his children stayed with Phillip.  Eugene Wilson, the shop owner and

13   Costella's employer, also contradicted Costella's testimony.  He testified that Costella only

14   worked at the shop for a few months after he purchased it from Phillip, and that the

15   purchase occurred October 30, 1992.  M.'s brother, S., also testified at the evidentiary

16   hearing that although they visited his grandfather, Phillip, frequently, they only spent three

17   to four weekends total at Phillip's house from 1993-1995.

18        In terms of M.'s credibility generally, Costella's ex-girlfriend, Chapman, testified at

19   the evidentiary hearing that M. was vocal and generally got what she wanted.  She testified

20   that M. often whined for the first sandwich or the front seat of the car.  She did not

21   remember M. lying or stealing, but she did not trust M.

22        Costella testified at the evidentiary hearing that he told Jachimowicz that M. was not

23   always honest.  Jachimowicz corroborated this, and testified that he discussed M.'s

24   credibility with Costella, but that Jachimowicz concluded that all of the incidents of

25   untruthfulness that Costella described to him were simply things that all teenagers lie

26   ────────────────

27        [4]The state argued in its habeas brief before the state appellate courts that even if
     Costella had had reduced visitation of his children in August and September 1993 due to
28   surgery, this would not have diminished M.'s credibility.

United States District Court

For the Northern District of California

1    about.  Jachimowicz further testified that he determined that presenting testimony

2    regarding M.'s typical teenage lies and behavior would have alienated the jury, and that in

3    deciding not to present the evidence, he made a tactical decision based on his past

4    experiences in similar cases.

5         Turning to Costella's claim that his counsel was ineffective for failing to introduce

6    both lay and expert testimony that he did not possess the characteristics of a sexual

7    deviant, Chapman testified that based on her observations during the time period before

8    the alleged molestation occurred, Costella did not appear to harbor an unusual sexual

9    interest in children.

10        Additionally, Costella elicited testimony from Dr. Alan Garton, a psychologist.  Dr.

11   Garton testified at the evidentiary hearing that in February 2003, he spent a total of four

12   hours interviewing and testing Costella for purposes of preparing a probation report.  He

13   also testified that he had never testified previously as an expert for purposes of providing

14   an opinion regarding the deviant sexual proclivities of adult child molesters.

15        Based on Dr. Garton's four-hour evaluation of Costella and his review of the police

16   reports, he could not believe that Costella committed the offenses.  Nevertheless, he

17   contemplated the possibility of Costella's guilt.  Although Garton did not observe any "red

18   flags" on Costella's tests, he admitted that there was some indication that Costella's

19   responses were "guarded."  Garton further conceded that he had never read or reviewed

20   M.'s testimony or that of any of the other witnesses, and that everything he learned

21   regarding Costella's history he learned from Costella himself.

22        Jachimowicz testified at the evidentiary hearing that he considered and investigated

23   the possibility of using expert testimony to demonstrate Costella's lack of sexually deviant

24   personality characteristics.  He consulted with Dr. Abbott, the expert who testified on

25   Costella's behalf at trial regarding CSAAS, about whether to test Costella for sexually

26   deviant characteristics.  Dr. Abbott, however, advised Jachimowicz that the allegations

27   were too old for testing to be helpful and that Costella's testimony on the issue would not

28

**United States District Court**
For the Northern District of California

1    be credible.

2         Dr. Abbott's testimony at the evidentiary hearing corroborated Jachimowicz's

3    testimony on the issue.  He asserted that he consulted with Jachimowicz on the issue and

4    advised Jachimowicz not to conduct psychological testing on Costella in an attempt to

5    show that he lacked the characteristics of a sex offender due to the age of the molestation

6    allegations.  Dr. Abbott explained that this was because in incest cases, the offender

7    typically does *not* demonstrate a sexual attraction to children generally.  Dr. Abbott advised

8    Jachimowicz that a psychological evaluation could backfire in court since the prosecution

9    could elicit testimony that Costella may have committed the offense even if he had a

10   normal history and lacked a specific psychological profile.

11        Following the three-day evidentiary hearing, on April 27, 2006, the Santa Clara

12   County Superior Court denied Costella's habeas petition.  The court first denied Costella's

13   claim that Jachimowicz provided ineffective assistance of counsel by failing to investigate

14   M.'s credibility.  The court noted that M. had testified at trial that the molestation began

15   when she was in the third grade, and that she described the molestation as occurring in her

16   own bedroom at the Willowdale residence.  However, the court found that based on the

17   evidence presented at the evidentiary hearing, during the school year 1992-1993 when M.

18   was in third grade, M. and her brother S. were sharing a bedroom and living with Costella

19   at Chapman's house, and Costella had not yet moved into the Willowdale residence.

20        The court further noted that the evidence at the hearing conflicted as to whether

21   Costella had in fact instructed Jachimowicz to contact Chapman to corroborate his living

22   arrangements during 1992-1993.  It ultimately found Jachimowicz's testimony to be more

23   credible than Costella's, and concluded trial counsel's performance was not deficient for

24   failing to investigate this issue since Costella specifically instructed him *not* to contact his

25   ex-girlfriends.

26        The court also found Costella's father's testimony regarding Costella's living

27   arrangements in 1993 inconsistent.  It discounted Phillip's testimony, noting that he "had

28

difficulty remembering when his grandchildren stayed with him, and his testimony conflicted with that of his grandson and that of shop owner Eugene Wilson."[5]

Nevertheless, even construing the facts in Costella's favor and assuming that his counsel's performance was deficient, the state court found that Costella had not demonstrated prejudice.  It suggested that Chapman's testimony was duplicative, and noted that at trial, Costella himself testified that he had not moved into the Willowdale residence until the summer of 1993.  Additionally, the court noted that M.'s testimony regarding the location of the molestations was not entirely unequivocal.  She was unable to remember when the molestations first occurred, and the only thing of which she was certain was the comforter on her bed at the time - a comforter M. had had for many years - even prior to the Willowdale residence.[6]

In support of its determination that Costella had not shown prejudice, the trial court noted that "[i]t was already uncontested [at trial] that the molest[ations] could not have occurred at the Willowdale residence while the victim was in third grade."  Recognizing this, Jachimowicz's defense was "not to attack the victim's testimony by painting her as a liar, but to show that she had imagined that the acts took place."  It noted that an approach that attempted to paint M. as a liar could have backfired on Costella given the evidence that M. revealed the molestation at a time when her mother threatened to send her to live with her father.  The court found that the evidence "reflect[ed] a victim who was willing to hide potentially embarrassing and painful memories of sexual misconduct until confronted with the prospect of living again with the person who molested her."

The trial court also denied Costella's ineffective assistance claim based on counsel's

---

[5]Additionally, there was other evidence that M. and S. stayed at the Willowdale residence during the time alleged by M., including Chapman's testimony at the evidentiary hearing; a declaration from Sharon Christie, Costella's next door neighbor on Willowdale Drive; and trial testimony from Costella's ex-wife, Patricia.

[6] M. actually testified that she was not positive that the molestation began when she was in the third grade, and that she *believed* that the molestation occurred at the Willowdale residence.  However, what M. most recalled was the furniture and comforter in the room, both of which she had had regardless of her residence since she was four years-old.

United States District Court

For the Northern District of California

failure to present evidence regarding his sexual deviancy.  Regarding expert testimony on
the topic, the trial court found that counsel's performance was not deficient because the
experts on both sides "agreed that the passage of time between the molest[ations] and the
time of the trial diminished the probative value of any pretrial personality tests."  However,
even assuming counsel's performance was deficient on the issue, the court found that
Costella had not demonstrated prejudice, determining that the personality test evidence
would have had little effect on the jury's determination regarding Costella's mental state at
the time of the molestations.  The court also cited Dr. Abbott's testimony that the jury could
reject such evidence to Costella's detriment.

Regarding lay testimony as to Costella's sexual deviancy, the court noted that
Costella had presented Chapman's testimony only at the hearing.  Even if the court
believed Costella that he had *not* instructed his counsel *not* to contact his ex-girlfriends, the
court found that he was unable to demonstrate prejudice because Chapman's testimony
was contradicted by other evidence at trial.

## ISSUES

Costella raises two claims for federal habeas relief, the first of which includes four
sub-claims:

(1)     That he received ineffective assistance from his trial counsel because he:

    a.     failed to investigate M.'s credibility;

    b.     failed to investigate evidence that could have been adduced from
    Costella's ex-girlfriends;

    c.     failed to explore the possibility of expert testimony regarding whether
    Costella had the propensity to commit the offenses; and

    d.     failed to explore the possibility of expert testimony regarding whether
    the victim had the propensity to "imagine" the molestations; and

(2)     that his ex post facto rights were violated when a new extended statute of
limitations was applied to his case after the previous, shorter limitations

United States District Court

For the Northern District of California

1    period had expired.

2                                    **STANDARD OF REVIEW**

3            This court may entertain a petition for writ of habeas corpus "on behalf of a person

4    in custody pursuant to the judgment of a state court only on the ground that he is in custody

5    in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. §

6    2254(a).  Because the petition in this case was filed after the effective date of the

7    Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the provisions of that act

8    apply here.  *See Lindh v. Murphy*, 521 U.S. 320, 327 (1997).  Under the AEDPA, a district

9    court may not grant a petition challenging a state conviction or sentence on the basis of a

10   claim that was reviewed on the merits in state court unless the state court's adjudication of

11   the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable

12   application of, clearly established Federal law, as determined by the Supreme Court of the

13   United States; or (2) resulted in a decision that was based on an unreasonable

14   determination of the facts in light of the evidence presented in the State court proceeding."

15   28 U.S.C. § 2254 (d).

16           A state court decision is "contrary to" Supreme Court authority, falling within the first

17   clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that

18   reached by [the Supreme] Court on a question of law or if the state court decided a case

19   differently than [the Supreme] Court has on a set of materially indistinguishable facts."

20   *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000).  "Clearly established federal law" under §

21   2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at

22   the time the state court renders its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71-72

23   (2003).  This "clearly established" law "refers to the holdings, as opposed to the dicta, of

24   [Supreme] Court decisions as of the time of the relevant state court decision."  *Id.*

25           "Under the 'unreasonable application' clause" of § 2254(d)(1), a federal habeas court

26   may grant the writ if the state court identifies the correct governing legal principle from [the

27   Supreme] Court's decisions but unreasonably applies that principle to the facts of the

28

                                                16

United States District Court

For the Northern District of California

1   prisoner's case." *Id.* at 74.  However, this standard "requires the state court decision to be

2   more than incorrect or erroneous." *Id.*  For the federal court to grant habeas relief, the

3   state court's application of the Supreme Court authority must be "objectively unreasonable."

4   *Id.* at 74-75.  The "objectively unreasonable" standard is different from the "clear error"

5   standard in that "the gloss of clear error fails to give proper deference to state courts by

6   conflating error (even clear error) with unreasonableness." *Id.* at 75; *see also Clark v.*

7   *Murphy*, 331 F.3d 1062, 1068 (9th Cir. 2003).  Therefore, "[i]t is not enough that a habeas

8   court, in its independent review of the legal question, is left with a firm conviction that the

9   state court was erroneous . . . Rather, the habeas court must conclude that the state

10  court's application of federal law was objectively unreasonable." *Andrade*, 538 U.S. at 75;

11  *see also Clark*, 331 F.3d at 1068.

12          As for state court findings of fact, under § 2254(d)(2), a federal court may not grant a

13  habeas petition by a state prisoner unless the adjudication of a claim on the merits by a

14  state court resulted in a decision that was based on an unreasonable determination of the

15  facts in light of the evidence presented in the state court proceeding.  28 U.S.C. §

16  2254(d)(2).  The "clearly erroneous" standard of unreasonableness that applies in

17  determining the "unreasonable application" of federal law under § 2254(d)(1) also applies in

18  determining the "unreasonable determination of facts in light of the evidence" under §

19  2254(d)(2).  *See Torres v . Prunty*, 223 F.3d 1103, 1107-1108 (9th Cir. 2000).  To grant

20  relief under 2254(d)(2), a federal court must be "left with a firm conviction that the

21  determination made by the state court was wrong and that the one [petitioner] urges was

22  correct." *Id.* at 1108.

23          However, when the state court decision does not articulate the rationale for its

24  determination or does not analyze the claim under *federal* constitutional law, a review of

25  that court's application of clearly established federal law is not possible.  *See Delgado v.*

26  *Lewis*, 223 F.3d 976, 981-82 (9th Cir. 2000).  When confronted with such a decision, a

27  federal court must conduct an independent review of the record and the relevant federal

28

United States District Court

For the Northern District of California

1  law to determine whether the state court's decision was "contrary to, or involved an

2  unreasonable application of, "clearly established federal law." *Id.* at 982.

> When a state court does not furnish a basis for its reasoning, we have no basis other than the record for knowing whether the state court correctly identified the governing legal principle or was extending the principle into a new context. . . .[A]lthough we cannot undertake our review by analyzing the basis for the state court's decision, we can view it through the 'objectively reasonable' lens ground by *Williams* [, 529 U.S. 362]. . . . Federal habeas review is not de novo when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law. . . .  Only by that examination may we determine whether the state court's decision was objectively reasonable.

*Id.*

## DISCUSSION

**A.    Motion to Expand Record**

Following his trial counsel's testimony at the state court evidentiary hearing, Costella

asked the court to admit a Powerpoint presentation printout as relevant to counsel's

credibility.  Exh. 18 at 342.  The printout purported to highlight alleged inconsistencies

between counsel's closing argument at trial and counsel's testimony at the evidentiary

hearing.  The state court refused to admit the printout because it was not part of the record

in the case below, and because it could not properly be considered as "evidence."  Instead,

the court held that it would admit and consider the transcripts of counsel's closing argument

in order to compare them with counsel's testimony at the evidentiary hearing.  Exh. 18 at

344-45.

Costella now seeks to expand the record to introduce the very printout that the state

trial court refused to admit into evidence at the evidentiary hearing on his habeas petition.

Accordingly, Costella's motion to expand the record is not really a Rule 7 motion to expand

the record to include "new" materials, but is instead an improper appeal of the state court's

evidentiary ruling, and thus is not a cognizable motion. *See Pulley v. Harris*, 465 U.S. 37,

41 (1984) (a state court's evidentiary ruling is not subject to federal habeas review unless

the ruling violates federal law, either by infringing upon a specific federal constitutional or

18

United States District Court

For the Northern District of California

1   statutory provision or by depriving the defendant of the fundamentally fair trial guaranteed

2   by due process).

3        Nevertheless, even if the court were to treat the request as a proper request to

4   expand the record under Rule 7, grant the request, and consider the Powerpoint printout in

5   conjunction with Costella's claims, it would not alter the court's rulings on the merits as set

6   forth below.

7   **B.**    **Ineffective Assistance of Counsel Claims**

8       **1.**    **Legal Standards**

9           **a.**    **State Court Factual Findings**

10        As noted, a federal habeas court may grant the writ if it concludes that the state

11   court's adjudication of the claim "resulted in a decision that was based on an unreasonable

12   determination of the facts in light of the evidence presented in the State court proceeding."

13   28 U.S.C. § 2254(d)(2).  Section 2254(d)(2) applies to intrinsic review of a state court's

14   process, or situations in which the petitioner challenges the state court's findings based

15   entirely on the state court record; whereas § 2254(e)(1) applies to challenges based on

16   extrinsic evidence, or evidence presented for the first time in federal court.  *Taylor v.*

17   *Maddox*, 366 F.3d 992, 999-1000 (9th Cir. 2004).[7]

18        The relevant question under § 2254(d)(2) is whether an appellate panel, applying the

19   normal standards of appellate review, could reasonably conclude that the state court

20   findings are supported by the record.  *Lambert v. Blodgett*, 393 F.3d 943, 978 (9th Cir.

21   2004).  Intrinsic challenges to state court findings pursuant to the "unreasonable

22   determination" standard may arise in several ways, including where the finding is

23   

24        [7]In *Wood v. Allen*, 130 S. Ct. 841, 848 & n.1 (2010), the Supreme Court noted a split

25   among the Circuits with respect to whether, in order to satisfy § 2254(d)(2), a petitioner must establish only that the state-court factual determination on which the decision was based was "unreasonable" (as *Maddox* holds) or whether § 2254(e)(1) also applies in every case

26   presenting a challenge under § 2254(d)(2) and therefore a petitioner must also rebut a presumption that the determination was correct with clear and convincing evidence. The *Wood*

27   Court, however, found it unnecessary to reach the question in that case, concluding that even if only § 2254(d)(2) applies, the state court's finding was reasonable.  *See id.* at 849.

28

United States District Court

For the Northern District of California

unsupported by sufficient evidence; where the state court should have made a finding of fact but neglected to do so; where the state court made findings of fact under a misapprehension of the correct legal standard; and where the fact-finding process itself was defective.  *See Maddox*, 366 F.3d at 999, 1000-1001; *see also DeWeaver v. Runnels,* 556 F.3d 995, 1006-07 (9th Cir. 2009) (petitioner did not show unreasonable determination of facts by merely disagreeing with the state court's interpretation of the record but not pointing to any material fact that the court failed to consider in reaching its determination that the trial judge had not coerced the jury to reach a verdict).

Where a petitioner challenges the state court's findings based entirely on the state record, "[the court] must be particularly deferential to [the] state court [],"and defer to its factual findings unless it is "convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record."  *Maxwell v. Roe*, 628 F.3d 486, 500 (9th Cir. 2010) (quoting *Maddox*, 366 F.3d at 999-1000).  "This is a daunting standard - one that will be satisfied in relatively few cases."  *Id.*  A state court's rejection of a claim following a hearing at which directly contradictory statements are offered constitutes an implied credibility determination by the state court that is entitled to deference under § 2254(d)(2).  *See Weaver v. Palmateer*, 455 F.3d 958, 963 n.6 (9th Cir. 2006).

Once a state court's fact-finding survives intrinsic review, the state court's findings are "dressed in a presumption of correctness, which then helps steel them against any challenge based on extrinsic evidence."  *Maddox*, 366 F.3d at 1000.  A petitioner must present clear and convincing evidence to overcome the presumption of correctness; conclusory assertions will not do.  *Id.*  Factual issues are defined as "basic, primary, or historical facts:  facts in the sense of a recital of external events and the credibility of their narrators."  *Coombs v. Maine*, 202 F.3d 14, 18 (1st Cir. 2000).  Additionally, a federal district court must accord a state court's credibility determination the highest deference. *See Knaubert v. Goldsmith*, 791 F.2d 722, 727 (9th Cir. 1985).

United States District Court

For the Northern District of California

**b.    Ineffective Assistance of Counsel Claims Generally**

In order to prevail on a Sixth Amendment ineffective assistance of counsel claim, a petitioner must establish two things.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms.  *Id.* at 687-88.  Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  *Id.*

A "doubly" deferential judicial review is appropriate in analyzing ineffective assistance of counsel claims under § 2254.  *See Harrington v. Richter*, 131 S. Ct. 770, 788 (2011); *Premo v. Moore*, 131 S. Ct. 733, 740 (2011) (same).  The general rule of *Strickland*, i.e., to review a defense counsel's effectiveness with great deference, gives the state courts greater leeway in reasonably applying that rule, which in turn "translates to a narrower range of decisions that are objectively unreasonable under AEDPA."  *Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  When § 2254(d) applies, "the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Harrington*, 131 S. Ct. at 788.

First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment.  *See Strickland*, 466 U.S. at 687.  The defendant must show that counsel's representation fell below an objective standard of reasonableness.  *See id.* at 688.  The relevant inquiry is not what defense counsel could have done, but rather whether the choices made by defense counsel were reasonable.  *See Babbitt v. Calderon*, 151 F.3d 1170, 1173 (9th Cir. 1998).  Judicial scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong presumption that

**United States District Court**
For the Northern District of California

counsel's conduct falls within the wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 689; *Wildman v. Johnson*, 261 F.3d 832, 838 (9th Cir. 2001) (finding no deficient performance by counsel who did not retain a ballistics expert on a menacing charge where the same expert had been used in the successful defense of the same defendant on a felon-in-possession charge).  The United States Supreme Court recently reaffirmed that

> [a]lthough courts may not indulge *post hoc* rationalizations for counsel's decisionmaking that contradicts the available evidence of counsel's actions, . . . neither may they insist counsel confirm every aspect of the strategic basis for his or her actions.  There is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect.

*Harrington*, 131 S. Ct. at 789; *see also id. at* 791 ("an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities").

Second, the defendant must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 688.  The test for prejudice is not outcome-determinative, i.e., defendant need not show that the deficient conduct more likely than not altered the outcome of the case; however, a simple showing that the defense was impaired is also not sufficient.  *Id.* at 693.  The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different; a reasonable probability is a probability sufficient to undermine confidence in the outcome.  *Id.* at 694. Where the defendant is challenging his conviction, the appropriate question is "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  *Id.* at 695.

**2.      Failure to Investigate M.'s Credibility**

In his petition before this court, Costella essentially seeks to re-argue the evidence from the state court evidentiary hearing, and has characterized it in a manner contrary to the state court's findings.  He argues that at the evidentiary hearing, his trial counsel,

United States District Court

For the Northern District of California

1   Jachimowicz, "offered a preposterous, illogical, and uncorroborated excuse as to why he

2   had not contacted [Costella's] ex-girlfriends."  Costella suggests that Jachimowicz was not

3   entitled to any deference regarding his strategy because his investigation was

4   presumptively deficient.  He contends that he has rebutted the presumption of correctness

5   afforded the state court's factual findings on the issue of Jachimowicz's credibility.

6       Additionally, Costella argues that the state court's determination that his living

7   arrangements "were not inconsistent" with M.'s testimony, is not a factual finding entitled to

8   a presumption of correctness because it was unreasonable in that it misstated M.'s

9   testimony.  Finally, Costella argues that the state court was unreasonable in not

10  considering the cumulative impact of all of the omitted testimony regarding M.'s credibility.

11      The court concludes that all of the state court's findings on this issue were

12  intrinsically sound and based on a reasonable determination of the facts in light of the

13  evidence presented before the state court at the evidentiary hearing.  Having reviewed the

14  record, the court further concludes that contrary to Costella's assertion, the state court

15  indeed considered the cumulative impact of the omitted testimony.  Accordingly, the state

16  court's findings are entitled to a presumption of correctness, including the state court's

17  finding that the pertinent evidence at the hearing was not entirely inconsistent with M.'s

18  testimony at trial.  Finally, the court concludes that Costella has not rebutted the

19  presumption of correctness with respect to any of the related factual findings, including the

20  state court's credibility findings.

21      The court also concludes that the state court's determinations that counsel's

22  performance was not deficient and that Costella failed to demonstrate prejudice were

23  neither contrary to, nor an unreasonable application of, clearly established federal law, as

24  determined by the Supreme Court of the United States.  A defense attorney has a general

25  duty to make reasonable investigations or to make a reasonable decision that makes

26  particular investigations unnecessary.  *See Strickland*, 466 U.S. at 691; *Turner v. Duncan*,

27  158 F.3d 449, 456 (9th Cir. 1998).  *Strickland* directs that "'a particular decision not to

28

United States District Court

For the Northern District of California

1   investigate must be directly assessed for reasonableness in all the circumstances, applying

2   a heavy measure of deference to counsel's judgments.'" *Silva v. Woodford*, 279 F.3d 825,

3   836 (9th Cir. 2002) (quoting *Strickland*, 466 U.S. at 491).   Moreover, counsel need not

4   pursue an investigation that would be fruitless or might be harmful to the defense.

5   *See Harrington*, 131 S. Ct. at 789-90.  The duty to investigate and prepare a defense does

6   not require that every conceivable witness be interviewed. *Hendricks v. Calderon*, 70 F.3d

7   1032, 1040 (9th Cir. 1995).

8        Importantly, here, Jachimowicz cannot be faulted for failing to procure Costella's ex-

9   girlfriend, Chapman, to testify on the issue of M.'s credibility when Costella instructed him

10  *not* to contact his ex-girlfriends.  Clearly established federal law provides that where a

11  defendant interferes with his counsel's efforts to present mitigating evidence, he cannot

12  later claim prejudice based on the attorney's failure to investigate and present such

13  evidence. *See Schriro v. Landrigan*, 550 U.S. 465, 478 (2007) (holding that "it was not

14  objectively unreasonable for [the state] court to conclude that a defendant who refused to

15  allow the presentation of any mitigating evidence could not establish *Strickland* prejudice

16  based on his counsel's failure to investigate further possible mitigating evidence"); *see also*

17  *Cox v. Del Papa*, 542 F.3d 669, 682-83 (9th Cir. 2008) (counsel's decision not to

18  investigate or present additional evidence regarding defendant's drug use not prejudicial

19  where defendant had continuously and strenuously protested any suggestions that his

20  behavior was the result of his drug use).

21        Moreover, it was not unreasonable for the court to conclude that Jachimowicz's

22  strategic decision, based on his experience in other similar cases, *not* to paint M., the child

23  victim of incest, as a liar before the jury was not deficient.  A difference of opinion as to trial

24  tactics does not constitute denial of effective assistance. *See United States v. Mayo*, 646

25  F.2d 369, 375 (9th Cir. 1981).  Tactical decisions of trial counsel deserve deference when:

26  (1) counsel in fact bases trial conduct on strategic considerations; (2) counsel makes an

27  informed decision based upon investigation; and (3) the decision appears reasonable under

28

United States District Court

For the Northern District of California

the circumstances.  *See Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994). Jachimowicz's testimony at the evidentiary hearing demonstrated that all three conditions were satisfied, and his strategy with respect to M.'s credibility deserved deference.

Nevertheless, even if the court were to conclude that Jachimowicz's performance regarding his investigation of M.'s credibility was somehow deficient, it was not unreasonable for the state court to conclude that Costella had not demonstrated prejudice. A defendant's mere speculation that a witness might have given helpful information if interviewed is not enough to establish ineffective assistance.  *See Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001).  To establish prejudice caused by the failure to call a witness, a petitioner must show that the witness was likely to have been available to testify, that the witness would have given the proffered testimony, and that the witness' testimony created a reasonable probability that the jury would have reached a verdict more favorable to the petitioner.  *Alcala v. Woodford*, 334 F.3d 862, 872-73 (9th Cir. 2003).  Based on the court's review of all of the omitted evidence on this issue, including Phillip Costella's testimony, the court is unable to conclude that the evidence presented at the evidentiary hearing but omitted from trial made it reasonably probable that a jury would have reached a different verdict.

For these reasons, the state court's decision on this issue was reasonable, and Costella is not entitled to habeas relief on this claim.

### 3.    Failure to Investigate Evidence from Costella's Ex-girlfriends

Costella again argues that the court should not presume correct the state court's credibility finding regarding why counsel failed to contact his ex-girlfriends because its finding was "preposterous."  Nevertheless, even if the court affords the state court's finding a presumption of correctness and accepts that Costella forbade his trial counsel from contacting his ex-girlfriends, Costella argues that his counsel should have done so anyway, suggesting that Costella's own lack of cooperation was no excuse and that trial counsel had a duty to convince him of the necessity to investigate his ex-girlfriends' testimony.

United States District Court

For the Northern District of California

1    The court begins by noting that, with this claim, even though Costella chose to call

2  only Chapman as a witness at the state court evidentiary hearing, he persists in making

3  arguments regarding how his other ex-girlfriends, Guest and Christie, could have testified

4  at the evidentiary hearing, and by extension, at the trial.  He has offered, though, no

5  explanation for his failure to call Guest and Christie to testify at the evidentiary hearing.

6  Nevertheless, even if the court were to assume that Guest and Christie could have testified

7  in accordance with the declarations Costella submitted with his state habeas petitions, it

8  would not grant relief.

9    For the reasons set forth above regarding the previous sub-claim, the court

10  concludes that the state court's credibility determination is entitled to deference.

11  Accordingly, given that Costella instructed Jachimowicz not to contact his ex-girlfriends for

12  evidence, he cannot now claim prejudice based on Jachimowicz's failure to investigate and

13  present such evidence.  *See Schriro*, 550 U.S. at 478.  Furthermore, given the fact that the

14  introduction of such testimony would have opened the door to the likely presentation of

15  expert testimony by the prosecution that in incest cases, the offender typically does *not*

16  demonstrate a sexual attraction to children generally, the decision not to introduce such

17  evidence was reasonable and did not constitute deficient performance.

18    For these reasons, this sub-claim fails as well.

19    **4.    Failure to Explore Expert Testimony regarding whether Costella had the**

20        **Propensity to Commit the Offenses**

21    Costella argues that the state court's decision on this issue was both an

22  unreasonable determination of the facts and an unreasonable application of *Strickland*.  He

23  suggests again that both Jachimowicz's and Dr. Abbott's testimony were not credible, and

24  contends that Jachimowicz was inconsistent regarding whether he made a tactical decision

25  not to seek expert testimony.

26    Again, for the reasons set forth above regarding the previous two sub-claims, the

27  court concludes that the state court's credibility determination is entitled to deference.

28

1   The court additionally concludes that the state court's decision on this issue was neither

2   contrary to, nor an unreasonable application of, clearly established federal law, as

3   determined by the Supreme Court of the United States.

4        The evidence demonstrated that Jachimowicz's decision not to call an expert on the

5   issue was well-informed and strategic.  He consulted with the defense expert, Dr. Abbott,

6   and concluded, for the same reasons as those set forth above, that such a strategy would

7   likely backfire.  If counsel reviews the preliminary facts of the case and reasonably decides

8   to pursue only one of two conflicting defense theories, for example, he need not investigate

9   the abandoned defense theory further.  *See Williams v. Woodford*, 384 F.3d 567, 611-612

10  (9th Cir. 2004) (where counsel reasonably selected an alibi defense as the primary defense

11  theory, counsel no longer had a duty to investigate a "conflicting" mental-state defense);

12  *Bean v. Calderon*, 163 F.3d 1073, 1082 (9th Cir. 1998) (attorney's duty to further

13  investigate diminished capacity defense ended when he chose to present an alibi theory

14  rather than a diminished capacity defense based largely on defendant's representations

15  that he was not present during the crime, defendant's refusal to blame his alleged co-

16  burglar, and defendant's refusal to adopt the diminished capacity defense).  Additionally,

17  where the evidence does not warrant it, the failure to call an expert does not amount to

18  ineffective assistance of counsel.  *See Wilson v. Henry*, 185 F.3d 986, 990 (9th Cir. 1999)

19  (a decision not to pursue testimony by a psychiatric expert is not unreasonable when the

20  evidence does not raise the possibility of a strong mental state defense).

21        Because Costella has not established that Jachimowicz's performance in this

22  respect was deficient, or that prejudice ensued, this sub-claim fails as well.

23        **5.      Failure to Explore Expert Testimony regarding whether M. had the**

24              **Propensity to "Imagine" the Molestations**

25        This was *not* one of the issues on which the California Supreme Court granted

26  review, and therefore, it is also *not* one of the issues on which the state superior court held

27  the evidentiary hearing.  Instead, Costella raised the issue for the first time in his post-

28

27

**United States District Court**

For the Northern District of California

1   evidentiary hearing brief before the trial court, and presumably that is why the trial court did

2   not rule on the issue in its April 27, 2006 order denying habeas relief.

3          Costella, however, did raise the claim in his subsequent September 1, 2006 post-

4   evidentiary hearing habeas petition filed before the California Court of Appeal.  Exh. 20 at

5   65-67.  The California Court of Appeal issued a postcard denial, and the California

6   Supreme Court also denied review in a postcard ruling.[8]  Accordingly, there is no written,

7   reasoned decision on the merits.

8          The state concedes in its opposition before this court that the court must construe

9   the state appellate courts' summary denials as an adjudication on the merits, and then

10  review the record independently to determine whether the state court's denial constituted

11  an unreasonable application of federal law.  *See Himes v. Thompson*, 336 F.3d 848, 853

12  (9th Cir. 2003).

13         Because Costella did not adequately present the nature of and bases underlying this

14  claim in his briefs before this court, the court reviewed all of the relevant state court briefs in

15  order to understand the essence of Costella's instant claim.  Before the state appellate

16  courts, Costella noted that at the evidentiary hearing, Jachimowicz stated that he

17  formulated a defense that M. imagined that the molestation occurred.  R.T. 249.  Costella

18  noted that Jachimowicz made "passing reference" in his closing argument, R.T. 680-81,

19  and in a 2004 declaration, that M. may have "convinced herself," that she was molested,

20  yet failed to introduce any expert testimony on the issue.   Based on Jachimowicz's

21  testimony at the evidentiary hearing, Costella suggested that it was thus ineffective

22  assistance of counsel for counsel to fail to call an expert to establish that M. could have

23  imagined the molestations.

24  

---

25         [8]In its answer to the petition for review before the California Supreme Court, the state
26  argued that the claim, which was presented as a new claim, should be denied as successive.
    Costella responded that it was only at the evidentiary hearing that the factual underpinnings
27  of the claim were discovered, and that the claim therefore should not be barred as successive.
    The state supreme court, however, failed to address the procedural issue, and simply issued
28  a postcard ruling denying review.

United States District Court

For the Northern District of California

1    In his petition before this court, Costella asserts that "[i]t was established at that

2  evidentiary hearing" that even though Jachimowicz discussed the case with his expert, Dr.

3  Abbott, and called Dr. Abbott as an expert on CSAAS, that Jachimowicz never

4  contemplated using expert testimony to support the defense that M. imagined the

5  molestations.  Costella argues that Jachimowicz's performance on this basis was deficient,

6  citing to a decision from the Fifth Circuit, *Soffar v. Dretke*, 368 F.3d 441, 476-477 (5th Cir.

7  2004), which he mistakenly characterizes as a Ninth Circuit case.

8    In opposition, the state suggests that Costella's claim is merely speculative, and that

9  he has not identified an expert, let alone proffered what an expert would have attested to

10  on the issue, or how such expert testimony would have affected the outcome of the

11  proceeding.  *See Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997) ("[s]peculation about

12  what an expert could have said is not enough to establish prejudice").

13    In his traverse, Costella again challenges the credibility of both Jachimowicz and Dr.

14  Abbott, and argues that the state court's findings after the evidentiary hearing regarding

15  Jachimowicz and Dr. Abbott are not entitled to a presumption of correctness.

16    Costella further extrapolates that Jachimowicz's failure to call an expert witness on

17  M.'s propensity to imagine the molestations translates more broadly into a claim that

18  Jachimowicz went to trial without a defense theory at all.  In doing so, Costella expands on

19  this claim beyond that presented in his state habeas petitions.  In those petitions, Costella

20  clearly stated that this ineffective assistance of counsel claim was based on counsel's

21  "failure to introduce *expert* testimony that M. could have imagined the molest[ations]."  Exh.

22  20 at 65; Exh. 22 at 8-9 ("Trial counsel stated that his strategy was to demonstrate not that

23  M. was lying but that she 'imagined' the molestations but offered no explanation why he did

24  not investigate the possibility of *expert* testimony on this subject.").  That is also how

25  Costella framed it in his petition before this court.  *See* Petition at 56 (framing claim as

26  failure "to consult an expert on [counsel's] theory that M. had imagined the molest[ation]").

27    However, now in his traverse, Costella seeks to expand and reframe the claim.  He

28

29

**United States District Court**
For the Northern District of California

1  now asserts that

2  > [He] does *not* contend that trial counsel was ineffective for not using an expert
   in support of this defense.  Rather, [he] contends that counsel's shifting
3  > positions are further evidence of his overall ineffectiveness, lack of defense
   strategy and the willingness to say anything to cover his own inadequacies.

4

5  Costella thus seeks an evidentiary hearing "*not* on whether trial counsel was

6  ineffective in not using expert testimony in support of his alleged defense that M. imagined

7  the molests[ations]."  Instead, Costella now seeks an evidentiary hearing before this court

8  "on whether [trial counsel] has been candid on a number of issues and had a strategy at

9  all."

10  This issue, however, was not raised before the state courts and therefore is

11  unexhausted and not cognizable.  The court will address the issue as framed originally, and

12  as exhausted before the state courts, and declines to address the expanded, unexhausted

13  issue contained in Costella's traverse.

14  First, for the same reasons stated above, the court finds that the state court's

15  credibility determinations as to Dr. Abbott and Jachimowicz are entitled to deference.  Even

16  though Costella failed to raise this issue before the state court at the evidentiary hearing,

17  this court is entitled to conclude that based on the state court's other credibility findings, it

18  would have similarly determined the testimony of Dr. Abbott and Jachimowicz to have been

19  credible.  *See Weaver*, 455 F.3d at 963 n.6.  As for the merits of the claim, the court

20  concludes that Costella has not demonstrated either deficient performance or prejudice.

21  There is nothing to suggest that the type of expert testimony Costella now accuses his

22  counsel of failing to produce even existed; let alone that it would have made a difference in

23  the jury's verdict.  A defendant's mere speculation that a witness might have given helpful

24  information if interviewed is not enough to establish ineffective assistance.  *See Bragg*, 242

25  F.3d at 1087.  Moreover, "[c]ounsel's actions are not be viewed through the 'distorting lens

26  of hindsight.'" *Turner v. Calderon*, 281 F.3d 851, 873 (9th Cir. 2002) (citing *Hendricks v.*

27  *Calderon*, 70 F.3d 1032, 1036 (9th Cir. 1995) ).  Rather, "an attorney's actions must be

28

United States District Court

For the Northern District of California

1    examined according to what was known and reasonable at the time the attorney made his

2    choices." *Hendricks*, 70 F.3d at 1036.  "What decision [petitioner's attorney] may have

3    made if he had more information at the time is exactly the sort of Monday-morning

4    quarterbacking . . . [that is] forbid[den]."  *Id.* at 1040.

5          For these reasons, this sub-claim fails.

6          **6.    Evidentiary Hearing Request**

7          Costella also requests an evidentiary hearing as to all of the ineffective assistance of

8    counsel sub-claims raised in his habeas petition.

9          The requirements of 28 U.S.C. § 2254(e)(2) govern requests for evidentiary

10   hearings.  Section 2254(e)(2) provides:

11        If the applicant has failed to develop the factual basis of a claim in state court
          proceedings, the court shall not hold an evidentiary hearing unless the
12        applicant shows that:

13        (A) the claim relies on–

14            (i) a new rule of constitutional law, made retroactive to cases on
          collateral review by the Supreme Court, that was previously unavailable; or

15

16            (ii) a factual predicate that could not have been previously discovered
          through the exercise of due diligence; *and*

17        (B) the facts underlying the claim would be sufficient to establish by clear and
          convincing evidence that but for constitutional error, no reasonable factfinder
18        would have found the applicant guilty of the underlying offense.

19        The United States Supreme Court has interpreted the opening paragraph of the

20   section to provide that where a petitioner has indeed exercised diligence to "develop the

21   factual bases" of his claims in state court, the requirements of section 2254(e)(2)(A)& (B)

22   do not apply to his request for an evidentiary hearing.  *Williams,* 529 U.S. at 435; *Holland v.*

23   *Jackson*, 542 U.S. 649, 652-53 (2004).  In other words, a petitioner who has exercised

24   such diligence will be taken out of the purview of section 2254(e)(2).  *Griffey v. Williams*,

25   345 F.3d 1058 (9th Cir. 2003), *vacated on other grounds as moot*, 349 F.3d 1157 (9th Cir.

26   2003) (petitioner died); *Williams*, 529 U.S. at 430 (showing under 2254(e)(2) "applies only

27   to prisoners who have 'failed to develop the factual basis of a claim in state court

28

                                         31

1   proceedings'").

2        Diligence "depends upon whether petitioner made a reasonable attempt, in light of

3   the information available at the time, to investigate and pursue claims in state court."

4   *Williams*, 529 U.S. at 435.  Diligence requires in the usual case that the prisoner, at a

5   minimum, seek an evidentiary hearing in state court in the manner prescribed by state law.

6   *Id.* Here, Costella requested and received an evidentiary hearing in conjunction with his

7   first three sub-claims for ineffective assistance of counsel. Thus, Costella can be said to

8   have exercised some degree of diligence in so far as he requested an evidentiary hearing.

9        However, even though Costella may have exercised diligence in making the request

10  before the state court, there is no per se requirement for an evidentiary hearing.  *Turner*,

11  281 F.3d at 890.   Rather, "a federal court must consider whether such a[n] [evidentiary]

12  hearing could enable an applicant to prove the petition's factual allegations, which, if true,

13  would entitle the applicant to federal habeas relief." *Schriro*, 127 S.Ct. at 1940.

14  Additionally, in considering whether the applicant would be entitled to federal habeas relief,

15  a federal court must take into account the deferential standards of 28 U.S.C. § 2254.  *See*

16  *id.* Moreover, "if the record refutes the applicant's factual allegations or otherwise

17  precludes habeas relief, a district court is not required to hold an evidentiary hearing."

18  *Schriro*, 127 S.Ct. at 1940 (citing *Totten v. Merkle,* 137 F.3d 1172, 1176 (9th Cir. 1998)

19  (affirming the denial of an evidentiary hearing where the applicant's factual allegations

20  "fl[ew] in the face of logic in light of ... [the applicant's] deliberate acts which are easily

21  discernible from the record"); *Anderson v. Attorney General of Kan.,* 425 F.3d 853, 858-859

22  (10th Cir. 2005) (holding that no evidentiary hearing is required if the applicant's allegations

23  are contravened by the existing record); *Clark v. Johnson,* 202 F.3d 760, 767 (5th Cir.

24  2000) (holding that no hearing is required when the applicant has failed to present clear

25  and convincing evidence to rebut a state court's factual findings)).

26        Here, Costella's claims may be resolved largely by reference to the state court

27  record, and as discussed above, many of Costella's factual allegations fly in the face of the

28

United States District Court

For the Northern District of California

1   record and/or the state court's factual findings, which this court has determined are entitled

2   to a presumption of correctness under AEDPA.  *See Totten,* 137 F.3d at 1176*; Gandarela*

3   *v. Johnson*, 286 F.3d 1080, 1087 (9th Cir. 2002) (denying petitioner's request for

4   evidentiary hearing regarding his assertion of actual innocence); *Griffey*, 345 F.3d at 1067

5   (even where petitioner had shown diligence entitling him to evidentiary hearing, Ninth

6   Circuit concluded that petitioner was not entitled to evidentiary hearing because his claims

7   could be resolved by reference to the state court record and the documentary evidence he

8   submitted). Given that this is the case, and given this court's consideration of AEDPA's

9   deferential standard enunciated by § 2254(d), the court DENIES Costella's request for an

10  evidentiary hearing as to the first three sub-claims for ineffective assistance of counsel.

11          Regarding the fourth sub-claim for ineffective assistance of counsel, that which

12  Costella did not raise until his habeas petitions following the state court's evidentiary

13  hearing, the court finds that Costella did not exercise sufficient diligence to investigate and

14  pursue the claim in state court, and for this reason, is not entitled to an evidentiary hearing

15  before this court.  However, even if Costella had exercised sufficient diligence as he did

16  with respect to the first three sub-claims, the court would nevertheless deny his request

17  because the claim can be resolved based on the record already before the court.

18          In sum, Costella's request for an evidentiary hearing on all four ineffective

19  assistance of counsel sub-claims is DENIED.

20  **C.    Ex Post Facto Claim**

21          On March 4, 2002, M. told her mother about the sexual abuse for the first time. The

22  next day she was interviewed by a San Jose police officer. She was seventeen years-old at

23  the time. The complaint, charging Costella with a violation of California Penal Code § 288.5,

24  continuous sexual abuse of a child between May 1, 1992, and December 31, 1995, was

25  filed on April 29, 2002. The subsequent information filed August 3, 2002, charged Costella

26  with one count of continuous sexual abuse of a child between May 1, 1992, and December

27  31, 1994, and one count of lewd and lascivious conduct between January 1, 1995, and

28

33

1   December 31, 1995.  Both the original complaint and the information contained tolling

2   language tracking the provisions of California Penal Code § 803(f).

3         California Penal Code § 803(f) became effective on January 1, 1990, and applied to

4   children who reported sexual crimes against them that occurred when they were under

5   seventeen years of age.  *People v. Garcia*, 33 Cal.App.4th 1119, 1127 (Cal. Ct. App. 1995).

6   Section 803(f) provides in pertinent part:

> (1) Notwithstanding any other limitation of time described in this chapter, a criminal complaint may be filed within one year of the date of a report to a responsible adult or agency by a child under 18 years of age that the child is a victim of a crime described in Section 261, 286, 288, 288a, 288.5, 289, 289.5.
>
>  (2) For purposes of this subdivision, a 'responsible adult' or 'agency' means a person or agency required to report pursuant to Section 11166. This subdivision applies only if both of the following occur:
>
> (A) The limitation period specified in Section 800 or 801 has expired.
>
> (B) The defendant has committed at least one violation of Section 261, 288, 288a, 288.5, 289, 298.5 against the same victim within the limitation period specified for that crime in either Section 800 or 801.
>
> (3)(A) This subdivision applies to a cause of action arising before, on or after January 1, 1990, the effective date of this subdivision, and it shall revive any cause of action barred by Section 800 or 801...." An amendment passed in 1993, effective in 1994, had increased the relevant age to 18 and added subdivision (g) to section 803, which is similar to subdivision (f), but is not limited to people who report while minors.

18        Generally, under California law, the prosecution of a crime punishable by

19  imprisonment for up to eight years or more, as in this case, was required to "be

20  commenced within six years after commission of the offense."  California Penal Code §

21  800.  Because the complaint in this case alleged that the continuous sexual abuse occurred

22  between May 1, 1992, and December 31, 1994, but for application of California Penal Code

23  § 803(f), the latest the complaint on that count could have been filed was December 31,

24  2000, when, in fact, it was filed April 29, 2002.

25        On direct appeal, Costella argued that his conviction for continuous sexual abuse

26  under California Penal Code § 288.5 was unconstitutional because it was time-barred and

27  in violation of the Ex Post Facto Clause pursuant to the United States Supreme Court's

28

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

1  decision in *Stogner v. California*, 539 U.S. 607 (2003).  The California Court of Appeal

2  rejected Costella's arguments, and affirmed his conviction in its October 1, 2004 decision,

3  which constitutes the last written, reasoned decision on the merits.

4  Costella makes the same argument he made before the state appellate courts in his

5  federal habeas petition, and contends that his conviction is unconstitutional because it was

6  obtained in violation of the Ex Post Facto Clause.  Costella argues that based on *Stogner*,

7  California Penal Code section 803(f) - a 1990 enactment which extended the statute of

8  limitations for certain sex crimes to one year from the date the crime was reported to a

9  California law enforcement agency - unconstitutionally revived a cause of action that could

10  not otherwise have been prosecuted.

11  In *Stogner*, the defendant was indicted in 1998 for sex-related child abuse

12  committed between 1995 and 1973.  539 U.S. at 609.  Without the then-new California

13  Penal Code section 803(g), which is nearly identical to section 803(f) at issue here,

14  California could not have prosecuted the *Stogner* defendant, as the statutes of limitations

15  on his alleged crimes had long since run.  *Id.* at 609-610. The Supreme Court held that, "a

16  law enacted after expiration of a previously applicable limitations period violates the Ex

17  Post Facto Clause when it is applied to revive a previously time-barred prosecution." *Id.* at

18  632-33. Accordingly, the Supreme Court invalidated Stogner's indictment. Id at 633.

19  Here, in rejecting Costella's *Stogner*-based claim for habeas relief, the court of

20  appeal noted that in *Stogner:*

21  The Supreme Court recognized, however, that, though a statute which
    revives an expired statute of limitations violates the ex post facto clause, a
22  statute which merely extends an unexpired statute of limitations does not.
    'Even where courts have upheld extensions of unexpired statutes of
23  limitations (extensions that our holding today does not affect . . . .), they have
    consistently distinguished situations where limitations periods have expired.
24  Further they have often done so by saying that extension of existing
    limitations periods is not ex post facto 'provided,' 'so long as,' 'because,' or 'if'
25  the prior limitations periods have not expired. . . . '

26  The court of appeal's holding comports with the Ninth Circuit's opinion in *Renderos*

27  *v. Ryan*, 469 F.3d 788 (9th Cir. 2006), in which the court rejected the petitioner's

28

United States District Court

For the Northern District of California

*Stogner*-based argument that § 803(g) violated the Ex Post Facto Clause by impermissibly reviving the limitations period. *Id* at 793. In *Renderos*, the court distinguished the *Stogner* case on the basis that, in *Stogne*r, "the amendment in question became effective after the statute of limitations had already expired," whereas in the *Renderos* petitioner's case, § 803(g) was enacted while the limitations periods were still running. *Id.* at 794-95. The Ninth Circuit also stated that the application of § 803(g) to the *Renderos* petitioner did not work "manifest injustice" because there was no retroactive effect, as the original limitations period had not yet expired. *Id* at 795. The *Renderos* petitioner also could not claim prejudice because he had notice and fair warning that he could still be prosecuted under § 803(g), even though the shorter limitation periods would soon expire. Id at 795-96.

The court finds the same reasoning applicable in *Renderos* to be applicable in this case. Here, § 803(f) became effective years before the criminal sexual abuse occurred. Accordingly, the court of appeal did not misapply clearly established Supreme Court precedent in rejecting Costella's challenge to § 803(f), nor did its decision involve an unreasonable determination of the facts.

## APPEALABILITY

The federal rules governing habeas cases brought by state prisoners require a district court that denies a habeas petition to grant or deny a certificate of appealability ("COA") in the ruling. *See* Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254.

A petitioner may not appeal a final order in a federal habeas corpus proceeding without first obtaining a certificate of appealability (formerly known as a certificate of probable cause to appeal). *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The certificate must indicate which issues satisfy this standard. *See id.* § 2253(c)(3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is

United States District Court

For the Northern District of California

straightforward: the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Jurists of reason could find the court's ruling on all four ineffective assistance of counsel sub-claims debatable or wrong.  A COA therefore will be GRANTED as to those issues only.  The COA is DENIED on the Ex Post Facto claim.

### CONCLUSION

For the reasons set forth above, Costella's petition for writ of habeas corpus is DENIED.  This order fully adjudicates this case and terminates all pending motions.  The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: March 18, 2011

_____
PHYLLIS J. HAMILTON
United States District Judge